

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM K. MOSSBURG,

                    Appellant,

          v.                                                    **DECISION AND ORDER**
                                                                07-CV-619S

NEW YORK STATE HIGHER EDUCATION
SERVICES CORPORATION and EDUCATIONAL
CREDIT MANAGEMENT CORPORATION,

                    Appellees.

## I. INTRODUCTION

On July 16, 2007, the bankruptcy court (Bucki, C.J.) issued a written decision

granting Appellee Educational Credit Management Corporation's ("ECMC") Motion for

Summary Judgment, finding that Appellant William K. Mossburg failed to demonstrate

the existence of a disputed issue of material fact concerning whether his federal student

loan obligations were subject to discharge under *Brunner v. New York State Higher*

*Education*, 831 F.2d 395 (2d Cir. 1987).  Mossburg now appeals that ruling.

For the reasons that follow, Mossburg's appeal is denied and the bankruptcy court's

decision is affirmed.

## II. BACKGROUND

While attending Clarkson University from 1974 through 1982 and the University

of Rochester from 1984 through 1985, Mossburg applied for and received 11

Guaranteed Student Loans and Federal Stafford Loans (subsidized) made by Keybank

of Central New York and guaranteed by Appellee New York State Higher Education

Services Corporation ("NYSHESC") under the Federal Family Education Loan program under Title IV, Part B of the Higher Education Act of 1965, as amended, 20 U.S.C. §§1081-1087-4.

Early on, Mossburg had difficulty maintaining a regular payment schedule. By 1991, his indebtedness, with unpaid interest and collection costs, had risen to more than $30,000. Mossburg made diligent efforts thereafter to maintain a payment schedule in the ensuing ten years. But faced with this and significant tax and credit card obligations, Mossburg filed a Chapter 7 petition.

From 1985 through 2005, Mossburg worked for Electronic Data Systems ("EDS"), where he was consistently promoted to various positions within the computer programming field. During his 20 years at EDS, Mossburg's salary tripled from approximately $20,000 to nearly $60,000 per year. He was laid off from EDS in 2005, not as a result of fault or incompetence on his part, but rather, because of EDS's financial difficulties.

After his wife died in July 2005, Mossburg lost more than $1500 in monthly government assistance and pension income, for which his wife had qualified. But Mossburg received $60,000 in life insurance proceeds and approximately $2,304 per month in social security survivor's benefits thereafter. In addition, Mossburg worked as a freelance and temporary contract computer programmer the following year, including contract job with INERGEX (HealthNow), where he grossed more than $10,000 in four weeks.

On or about October 31, 2005, Mossburg commenced this adversary proceeding seeking to determine the dischargeability of his student loans pursuant to 11 U.S.C. §

523(a)(8).  After Mossburg filed bankruptcy and initiated the adversary proceeding, on or about November 28, 2005, NYSHESC transferred Mossburg's loans to ECMC.  At that time, Mossburg's loan balance was $27,889.66, consisting of $19,775.52 in principal, $2,536.20 in unpaid interest, and $5,577.94 in collection costs. As of April 19, 2007, the total balance was $29,803.59, consisting of principal, unpaid interest, and collections costs assessed pursuant to federal regulations.

Mossburg claimed monthly expenses of approximately $3,125, including three cell phones ($120.00/month), cable and internet ($128.00/month), and Tae Kwon Do lessons ($105/month).  The record below shows additional purchases during the six months immediately after Mossburg filed this adversary proceeding.  Between October 2005 and April 2006, Mossburg's expenditures included the following:  $473 minicam; $255 ski club membership; $369 digital camera;  $1,000 school clothes shopping trip; $600 trip to Rochester; $800 Easter trip; $800 Christmas trip; $1,000 for Christmas gifts and party; $120 for tennis lessons; $3,262.48 Sony Television; and $300 contribution for a cheerleading trip to Puerto Rico.

ECMC moved for summary judgment on or about April 20, 2007.  The bankruptcy court found that there were material facts in dispute that would affect the determination of prongs one and three of the *Brunner* undue hardship test.  But with respect to prong two, the court determined that no material facts were in dispute and, based on the evidence of record, Mossburg could not meet the second prong under *Brunner*. Consequently, the court entered summary judgment in ECMC's favor on the issue of whether Mossburg's student loans were subject to discharge in bankruptcy.

## III.  DISCUSSION

A.     **Jurisdiction and Standard of Review**

Jurisdiction is conferred upon the district courts to hear appeals from decisions of the bankruptcy courts pursuant to 28 U.S.C. § 158(a).  The district court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo. See* Fed R. Bankr. P. 8013; *Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 756 (S.D.N.Y. 1985); *see also Williams v. New York Higher Educ. Servs. Corp. (In re Williams)*, 296 B.R. 298, 302 (S.D.N.Y. 2003). "Whether discharging a debtor's student loans would impose an 'undue hardship' under 11 U.S.C. § 523(a)(8) requires a legal conclusion, which is to be reviewed *de novo.*" *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir. 2001); *see also Davis v. Educ. Credit Mgmt. Corp. (In re Davis)*, 373 B.R. 241, 244-45 (W.D.N.Y. 2007).

B.     **Dischargeabilty**

Educational loans are generally not dischargeable under 11 U.S.C. § 523(a)(8), unless the debtor proves that "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).  A three-prong test of "undue hardship" was adopted by the Second Circuit in *Brunner v. N. Y. Higher Educ. Servs.Corp.*, 831 F.23d 395 (2d Cir. 1987).  *See In re N.M. v. Educ. Credit Mgmt. Corp. (In re N.M.),* 325 B.R. 507, 508-509, 511 (Bankr. W.D.N.Y. 2005) (Bucki, J.); *In re Teresa Belton v. Educ. Credit Mgmt. Corp. (In re Belton)*, 337 B.R. 471, 472 (Bankr. W.D.N.Y.2006) (Bucki, J.); *see also DeRose v. EFG Tech. (In Re DeRose)*, 316 B.R. 606, 607 (Bankr. W.D.N.Y. 2004).

4

The *Brunner* test requires that a debtor demonstrate by credible and sufficient evidence that:

> (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for educational loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*N.M.,* 325 B.R. at 507, 508-509; *DeRose,* 316 B.R. at 607 n.1 (citing *Brunner,* 831 F.2d at 396).

The debtor bears the burden of proof on each element of the *Brunner* test by a preponderance of the evidence. *N.M.,* 325 B.R. at 511; *Thoms v. Ed. Credit Mngmt. Corp. (In re Thoms),* 257 B.R. 144, 148 (Bankr. S.D.N.Y. 2001); *Fowler v. Conn. Educ. Loan Found. (In re Fowler),* 250 B.R. 828, 830 (Bankr. D. Conn. 2000). The court may not consider equitable concerns or other extraneous factors outside the three-prong *Brunner* test. *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)* 72 F.3d 298, 306 (3d Cir. 1995). If any one of the *Brunner* requirements is not met, the bankruptcy court's inquiry must end with a finding of no dischargeability. *See N.M.,* 325 B.R. at 509-510; *Faish,* 72 F.3d at 306; *see also In re Robeson,* 999 F.2d 1132, 1135 (7th Cir. 1993).

Mossburg argues that the standard of proof for the second prong of the *Brunner* test is raised to an inappropriate level when considered by way of a dispositive motion and that the denial of a trial results in harsher consequences than those existing at the time *Brunner* was decided. He further argues that the projection of his past income,

which was rife with uncertainty, into an uncertain future created an impossible standard of proof to overcome.

Mossburg directs this Court's attention to the Fourth Circuit's decision in *In Re Frushour*, which compares the second prong of *Brunner* to a "certainty of hopelessness." 433 F. 3d 393 (4th Cir. 2005). Mossburg argues that, in the proceedings below, he set forth two circumstances illustrating his "certainty of hopelessness": his obsolete skills and his deceased wife's psychological disabilities, which, despite her death in 2005, continue to impact his ability to obtain employment.

The "certainty of hopelessness" language appears in the district court's decision in *Brunner*, which the Second Circuit adopted without qualification. Specifically, the district court said:

> Perhaps the best articulation of this doctrine is that of Judge Lifland of the Bankruptcy Court of this district, who wrote that "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Briscoe,* 16 B.R. 128, 131 (Bankr. S.D.N.Y.1981).

*Brunner v. N.Y. Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 755 (S.D.N.Y. 1985).

The district court in *Brunner* explained that the debtor must show "a total incapacity now and in the future to pay [her] debts for reasons not within [her] control." *Id.* at 758 (internal citations omitted). In affirming the district court, the Second Circuit echoed this analysis: "Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to

repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" *See Brunner*, 831 F.2d at 396.

The phrase "certainty of hopelessness" is not a burden of proof but instead describes the legal standard of "undue hardship."   The burden of proof is preponderance of the evidence, whether at the summary judgment stage or at trial. Preponderance of the evidence, while "not a high standard . . . is not . . . a toothless standard either." *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999). Preponderance of the evidence means "more likely than not." *See United States v. Rodriguez*, 406 F.3d 1261, 1299 (11th Cir. 2005).

In this case, the bankruptcy court correctly concluded that Mossburg failed to present evidence from which a reasonable finder of fact could conclude by a preponderance of the evidence that there were additional, exceptional circumstances indicating "a total incapacity now and in the future to pay his debts for reasons not within his control." *Brunner*, 46 B.R. at 758.

In this Court's view, the bankruptcy court properly considered that "[t]he type[s] of additional circumstances contemplated by *Brunner* are well beyond those circumstances that normally accompany any bankruptcy." *Davis*, 373 B.R. at 249-50. Courts typically find prong two satisfied under such extreme circumstances as severe illness, disability, or an unusually large number of dependents. *See id.* (citing *In re Oyler*, 397 F.3d 382, 386 (6th Cir. 2005)).  Prong two is "a demanding requirement, and necessitates that a certainty of hopelessness exists that the debtor will not be able to repay the student loans." *Davis*, 373 B.R. at 250.  Mossburg did not offer any evidence of such extreme circumstances.

Mossburg argues that he offered evidence supporting two "circumstances" to the bankruptcy court, which, in Mossburg's view, were sufficient to overcome ECMC's motion for summary judgment: (1) his difficulty finding a job; and (2) his deceased wife's medical and psychological conditions.   But Mossburg failed to provide sufficient evidence establishing either of these claimed "circumstances," let alone evidence from which it could reasonably be determined that they constituted sufficiently extreme circumstances to meet the second prong of *Brunner*.

Evidence in the record establishes that Mossburg made $10,000 in four weeks in 2006 working as a contract programmer.  In addition, Mossburg indicated that he was only months away from testing for new employment-related certifications.   This undisputed evidence suggests not that Mossburg's employment prospects were hopeless, but rather, that they were promising.

As to his wife's medical and psychological conditions, Mossburg argues that they constitute "additional circumstances" that should have been considered in determining whether he presented sufficient evidence to survive summary judgment.  In particular, Mossburg points to his interrogatory responses, which he says illustrate that ten years of being subjected to "regular, intrusive and traumatic outbreaks impacted the family's ability to earn income" and the "recollections of these experiences continue to have a significant impact on his ability to obtain sufficient employment."

But in the same response, Mossburg admits that he himself has not been diagnosed with a medical or psychological condition constituting an exceptional circumstance.  Moreover, Mossburg offered no evidence of how these circumstances actually affected his present ability to earn or any evidence that they will continue to

affect his future ability to earn. *Brunner* requires evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, which more reliably guarantees that the hardship presented is undue. *Brunner*, 831 F. 2d at 396. Mossburg did not provide such evidence.

## C.    Summary Judgment

Mossberg argues that *Brunner*'s undue hardship standard is elevated when considered by way of a summary judgment motion. It is clear that summary judgment is an available remedy pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7056, which permits summary judgment to be granted to a moving party if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" *See also In re O'Brien*, 299 B.R. 725, 727 (Bankr. S.D.N.Y. 2003) (granting summary judgment). *Brunner* is the governing standard for undue hardship proceedings and the consideration on summary judgment did not create an impossible standard of proof for Mossburg to overcome.


## IV. CONCLUSION

For the reasons stated above, Mossburg's appeal is denied and the bankruptcy court's July 16, 2007 decision granting summary judgment in ECMC's favor is affirmed.

## V. ORDERS

IT HEREBY IS ORDERED, that Appellant's Appeal (Docket No. 1) is DENIED.

FURTHER, that the Bankruptcy Court's decision is AFFIRMED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:        March 31, 2010
              Buffalo, New York


                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                      United States District Court

10